UNITED STATES of America, Plaintiff–Appellee,

v.

Roderick B. KIMMONS, also known as Skins, Defendant–Appellant.

No. 89–3233.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1990.

Decided Nov. 7, 1990.

**1012**

Patrick B. Murray, Barry R. Elden, Asst. U.S. Atty., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Donald K. Schott, Erica M. Eisinger, Quarles & Brady, Madison, Wis., Roderick B. Kimmons, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

On June 23, 1989, a jury convicted defendant-appellant Roderick Kimmons on three counts of cocaine distribution of amounts from .4 to 2 grams, on one count of possessing a larger amount of cocaine with intent to distribute, on one count of possession of .25 grams of cocaine, and on one count of conspiring to possess with intent to distribute and to distribute cocaine.[1] On appeal, Kimmons argues that insufficiency of the evidence requires reversal of the conspiracy conviction. He also contends that all of his convictions should be reversed because the five-month delay in

Kimmons' receipt of a copy of the trial transcript constituted a violation of his due process rights. We agree with Kimmons on the conspiracy issue and reverse that conviction based on insufficiency of the evidence; however, we do not accept the argument that Kimmons was denied a fair appeal because of delay in production of the trial transcript. The unfortunate delay was not sufficiently prejudicial to warrant dismissal of all convictions.

## I. FACTS

The cocaine convictions arise from an investigation by the Federal Bureau of Investigation ("FBI") which commenced in October, 1988. At that time, the FBI received a tip that FBI Special Agent Kimmons was involved in cocaine sales. Linda Sudlow provided this information.

Sudlow first met Kimmons in September, 1987, at Bijan's restaurant in Chicago. Kimmons and Sudlow joined two other people and consumed cocaine supplied by Kimmons as a "gift." During the next year, Sudlow saw Kimmons at Bijan's several times, knowing him only by his nickname "Skins," and not knowing of his status as a special agent. It was not until a July, 1988 meeting between Sudlow and Kimmons that Kimmons revealed to Sudlow his career with the FBI.

Ms. Sudlow saw Kimmons at Bijan's in April, 1988, and upon encountering Kimmons asked him if he could obtain a gram of cocaine for her use. At this meeting, Sudlow first discovered the existence of the elusive "North Shore man"—Kimmons' cocaine source. Kimmons told Sudlow he was waiting for this man to arrive, and would be able to acquire the requested cocaine at that time. Kimmons actually provided Sudlow with a matchbox containing cocaine before meeting with his source. Later in the evening, Kimmons noted that his friend from the North Shore had arrived. Sudlow observed the man as he entered the restaurant, but Kimmons met with him out of Sudlow's sight. Kimmons

1. Four violations of 21 U.S.C. § 841(a)(1), one violation of 21 U.S.C. § 844(a), and one violation of 21 U.S.C. § 846.

then returned to Sudlow and sold her a matchbox of approximately one gram of cocaine for $100.00.

Sudlow and a friend, Bonnie Ansburg, saw Kimmons at Bijan's on August 19, 1988, and the two women asked Kimmons for some cocaine. Before satisfying their request, Kimmons visited with a man who was, according to Sudlow's testimony, the North Shore man from the prior encounter. Once again, Kimmons met with this friend outside of Sudlow's presence. Sudlow never saw this man after that night.

Later that evening, Sudlow, Kimmons and Ansburg traveled to the Limelight nightclub. While outside the club, Kimmons produced a small plastic bag containing an amount of cocaine approximated at thirty-two grams. The exact amount was not verified. Kimmons sold Sudlow one gram of cocaine for $100.00, and gave a small amount to Ansburg as a gift.

Sudlow approached the FBI in October, 1988, and informed them of Kimmons' cocaine-related activities. The FBI began the investigation of Kimmons and Sudlow participated in the FBI's operation. On October 18 and 19, 1988, Sudlow telephoned Kimmons. In conversations recorded by the FBI, Sudlow asked about Kimmons' North Shore friend, indicated that she wanted some cocaine, and arranged a meeting with Kimmons at Bijan's.

The night of October 19, Sudlow and undercover FBI agent Barbara Hastings met with Kimmons. The FBI taped the conversation with hidden microphones. Kimmons told Sudlow and Hastings that he had no cocaine because he had not met with his North Shore friend earlier that day as he had planned. Kimmons eventually approached a waitress at Bijan's, and from her procured some cocaine which he placed in a matchbox and presented as a gift to Sudlow and Hastings. The trio then made plans to meet the next evening.

Kimmons, Sudlow and Hastings met again the evening of October 20, and Sudlow asked if Kimmons had met the North Shore man that day. He responded affirmatively and Sudlow asked him whether she could purchase a gram of cocaine, and

whether he could obtain some cocaine for Hastings. He sold Sudlow one gram for $100.00, and indicated that he might have trouble providing for Hastings. He did sell Hastings .4 grams of cocaine. The next day, October 21, 1988, the FBI arrested Kimmons and at that time found .25 grams of cocaine in a cigarette package in Kimmons' suit coat.

After a November 7, 1988 indictment, and the June 23, 1989 jury conviction on six of nine counts charged, the district court judge sentenced Kimmons to concurrent sentences of fifteen months imprisonment and three years of supervised release, plus special assessments of $50.00 for each felony count ($275.00 assessment). Kimmons filed a timely notice of appeal, and then, per Kimmons' request, new counsel was appointed to represent him.

Requests for production of the trial transcript did not prove fruitful until five months after counsel's initial efforts to secure the transcript. The initial due date for filing of Kimmons' brief was January 8, 1990. Counsel for Kimmons made four motions to extend time to file the appellate brief and short appendix, each time noting the problems experienced with obtaining the transcript, and this court granted all of the motions. Kimmons filed a brief with this court on June 4, 1990. Kimmons received the transcript on June 21, 1990 and this court granted his motion to expedite appeal based on the transcript delay problem. Kimmons also was given leave to withdraw the earlier brief and to file a new brief by July 23, 1990. Having complied with that deadline, this appeal ensued.

## II. ANALYSIS

### A. Due Process

■ Kimmons argues that the delay in production of the trial transcript was inordinate and inexcusable, and therefore a violation of due process requiring reversal of all of his convictions. The two questions that arise from this claim are whether a five-month wait for a trial transcript is indeed inordinate and inexcusable delay, and whether such delay is considered a

violation of due process which deserves reversal of the judgment below. While we do not condone any delay in the production of trial transcripts or in the appeals process, Kimmons suffered no harm here that would justify overturning all six of his convictions, especially since his appeal challenges the substance of only one of those convictions.

In examining the alleged inordinate and inexcusable length of the delay faced by Kimmons, we find the five-month delay to be minimal and far less than in other cases considering the issue. As pointed out in *Rheuark v. Shaw*, 628 F.2d 297 (5th Cir. 1980), *cert. denied*, 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981), "not every delay in the appeal of a case, even an inordinate one, violates due process." 628 F.2d at 303. In *United States v. Pratt*, 645 F.2d 89 (1st Cir.), *cert. denied*, 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981), the court found that a nine-month delay in obtaining a trial transcript was not unconstitutional delay. 645 F.2d at 91. Other cases containing assertions that a delay in the appeals process constituted a possible due process violation dealt with considerably longer delays than that experienced by Kimmons. *See, e.g., Rheuark v. Shaw*, 628 F.2d at 297 (transcript delay of twenty-three months, eleven days after judge ordered its preparation); *United States v. Antoine*, 906 F.2d 1379 (9th Cir.1990) (three-year delay, two years of which attributable to court reporter's failure to provide transcript); *DeLancy v. Caldwell*, 741 F.2d 1246 (10th Cir.1984) (section 1983 case in which court reporter refused to release transcript for three years).

Rule 11 of the Federal Rules of Appellate Procedure details the procedure to be followed by a court reporter when a transcript request is made.[2] The court reporter for Kimmons' trial did not follow these rules as required, but as we stated in a recent case involving court reporter duties, a court reporter's failure to abide with the rules requires reversal of a conviction "only if the defendant can demonstrate prejudice." *United States v. Nolan*, 910 F.2d 1553, 1560 (7th Cir.1990).[3] *See United States v. Antoine*, 906 F.2d at 1382 (no due process violation can occur without evidence of harm to the appellant). We stated that prejudice occurs only when the unavailability of a transcript prevents the appellate court from determining whether there is reversible error, and added that "lack of a transcript does not necessarily mean that review is impossible." *United States v. Nolan*, 910 F.2d at 1560.

In Kimmons' situation, we are not required to decide an appeal without a transcript, for Kimmons had received a copy of the transcript before the filing of his final brief. Kimmons does not allege that five of his six convictions are wrong on the merits, but challenges only the conspiracy conviction. Even if we were to find that a due process violation occurred, the remedy sought by Kimmons is extreme given the one substantive challenge to the convictions. In *United States v. Pratt*, the court noted that it declined to hold the nine-month transcript delay unconstitutional because of a lack of "exacerbating factors" and "in light of the remedies that appellant [sought]: reversal of judgment and either entry of judgment for him or new trial."

**2.** Upon receipt of an order for a transcript, the reporter shall acknowledge at the foot of the order the fact that the reporter has received it and the date on which the reporter expects to have the transcript completed and shall transmit the order, so endorsed, to the clerk of the court of appeals. If the transcript cannot be completed within 30 days of receipt of the order the reporter shall request an extension of time from the clerk of the court of appeals and the action of the clerk of the court of appeals shall be entered on the docket and the parties notified. In the event of the failure of the reporter to file the transcript within the time allowed,

the clerk of the court of appeals shall notify the district judge and take such other steps as may be directed by the court of appeals.

Fed.R.App.P. 11(b).

**3.** In *Nolan*, the defendant challenged the admission of certain evidence against him. The issue presented on appeal focused on the failure of the court reporter to record a sidebar discussion, a violation of the court reporter's duty under 28 U.S.C. § 753(b). We held that the failure to record this conference was not reversible error.

645 F.2d at 91. Our reasoning in this case parallels the *Pratt* decision.

This court has not previously addressed the issue of whether a due process violation occurs when belated receipt of a trial transcript causes a delay in appeal. Other courts have considered the matter and recognize that excessive delay in the appellate process can amount to a deprivation of due process. *United States v. Pratt*, 645 F.2d at 89. *See also, DeLancy v. Caldwell*, 741 F.2d at 1247; *Rheuark v. Shaw*, 628 F.2d at 302. In *Rheuark*, the Fifth Circuit determined that the right to appeal without unreasonable delay is similar to the right to a speedy trial. Thus, the *Rheuark* court adopted the factors established in the Supreme Court speedy trial case *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether delay in the appellate process constituted a due process violation.[4] Because we have evaluated this case with the prejudice to Kimmons as our focus, we find it unnecessary to apply all of the *Barker* factors.

Kimmons received a jury trial, was convicted on six counts, and appeals only one conviction on the merits. The trial judge sentenced Kimmons to concurrent sentences of fifteen months imprisonment and three years of supervised release. Thus, even by overturning the conspiracy conviction, Kimmons' sentence may remain the same. The transcript was obtained by Kimmons only five months late, and this court cooperated to assure the speediest appeal possible once the transcript was made available. Kimmons' appeal on this issue must fail.

### B. Sufficiency of the Evidence

■ Kimmons argues that the conspiracy conviction should be reversed because there was insufficient evidence to support the convictions. Kimmons asserts that his role in the transactions with the North Shore man consisted of a buyer-seller relationship and nothing more.

Kimmons faces a heavy burden in challenging the conspiracy conviction on insufficiency of the evidence because, as numerous cases assert, "in considering a claim that a conspiracy has not been proved we must review the evidence in the light most favorable to the government, and uphold the trier of fact's finding of conspiracy unless no rational trier of fact could have found a conspiracy based on the evidence." *United States v. Cea*, 914 F.2d 881, 885 (7th Cir.1990) (citations omitted) (citing *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1978)). *See United States v. Durrive*, 902 F.2d 1221, 1225 (7th Cir.1990); *United States v. Douglas*, 874 F.2d 1145, 1151 (7th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989). The review standard is further explained in *United States v. Durrive*, which states, "when the sufficiency of the evidence to connect a particular defendant to a conspiracy is challenged on appeal, 'substantial evidence' should be the test rather than 'slight evidence' or 'slight connection.'" 902 F.2d at 1228.[5] Using these standards we conclude that the facts of this case do not support a conviction of conspiring to possess with intent to distribute and to distribute cocaine.

Kimmons claims that the relationship between him and the North Shore friend was no more than that of buyer and seller. We have stated frequently that the existence of a mere buyer-seller relationship alone is insufficient to support a conspiracy conviction. *United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978), explains,

> [b]ecause the crime of conspiracy requires a concert of action among two or

---

**4.** The four *Barker* factors, developed in the speedy trial context, are the following: (1) the length of delay; (2) the reason the government gives for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) prejudice to the defendant. 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

**5.** *United States v. Romo*, 914 F.2d 889, 899 (7th Cir.1990), illustrates that the Durrive test applies even to cases in which the trial was held prior to the *Durrive* decision. Such is the case with Kimmons' trial and our application of *Durrive.*

more persons for a common purpose, the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction.

"The relationship of buyer and seller *absent any prior or contemporaneous understanding beyond the mere sales agreement* does not prove a conspiracy to sell, receive, barter or dispose of stolen property although both parties know of the stolen character of the goods. In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective."

(quoting *United States v. Ford,* 324 F.2d 950, 952 (7th Cir.1963)). *See also United States v. Cea,* 914 F.2d at 886.

A conspiracy is " 'a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.' " *United States v. Durrive,* 902 F.2d at 1225 (quoting *United States v. Whaley,* 830 F.2d 1469, 1473 (7th Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988)). Therefore, the government must prove that a conspiracy actually existed, and then prove that Kimmons "knowingly and intentionally became a member of the conspiracy." *United States v. Troop,* 890 F.2d 1393, 1397 (7th Cir.1989). *See also United States v. Sullivan,* 903 F.2d 1093, 1098–99 (7th Cir.1990) (the government must prove more than " 'mere association' ").

A crucial element lacking in the government's case is information about the North Shore man. Because a conspiracy conviction requires agreement to commit a criminal act, there needs to be substantial evidence about those individuals alleged to have joined together to further their criminal purpose. The only evidence submitted in this case consisted of Sudlow's observation of Kimmons' contact with his friend from the North Shore, and unwitnessed purchases of cocaine from this friend by Kimmons. We know very little about the friend from the North Shore and have no facts indicating that his involvement in co-caine distribution was in a conspiracy or that he conspired with Kimmons to distribute cocaine.

The information regarding the drug suppliers in *United States v. Mancari,* 875 F.2d 103 (7th Cir.1989), is comparable to information on the source in Kimmons' case. In *Mancari,* defendant Mancari purchased small quantities of cocaine, at most a quarter of an ounce, and he bought from more than one source. This court determined that a supplier would not be able to conclude that Mancari was purchasing for resale and not for personal consumption. There was one known supplier who may have known Mancari was buying for resale; however, there was no evidence that the other suppliers had such knowledge because, as with the North Shore man, there was "no evidence about those suppliers." *United States v. Mancari,* 875 F.2d at 105.

The government places great emphasis on Kimmons' possession of a plastic bag filled with thirty-two grams of cocaine. In cases holding that the supplier must have known that the buyer was reselling drugs, the amount of drugs purchased was large enough that no rational drug trader could imagine the purchase was for personal use. *See, e.g., United States v. Mancari,* 875 F.2d at 105 (purchase of quarter of an ounce not sufficiently large). In *United States v. Baker,* 905 F.2d 1100 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 206, 112 L.Ed.2d 167 (1990) however, we noted that "[e]ven a large purchase does not demonstrate these things, any more than a purchase of 100 tons of steel to build a skyscraper shows that the buyer has 'joined' the corporate enterprise of the manufacturer." 905 F.2d at 1106 (citations omitted). The largest amount tied with Kimmons is the thirty-two grams seen in the plastic bag. At trial, Drug Enforcement Agency Special Agent Thomas Kelly, testified that an amount of thirty grams of cocaine can be an amount consistent with use for distribution, but also that the amount could be for personal use, depending on the individual.

The government needed to prove that Kimmons was buying for the purpose of

reselling, not just for personal use, and that his North Shore supplier knew Kimmons was buying for resale. *United States v. Mancari*, 875 F.2d at 105. The evidence presented at trial does not indicate such knowledge on the part of Kimmons or the North Shore man. Actually, the facts indicate that Kimmons did not always sell the cocaine to users. Many times he provided cocaine as a gift to friends—hardly the behavior of a hard core conspirator.

While we acknowledge that a conspiracy may be proved by circumstantial evidence, "the piling of inference upon inference," *United States v. Redwine*, 715 F.2d 315, 319 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984), is not sufficient in a criminal case where "innocent until proven guilty" reigns supreme. As *Redwine* expounds, "the reviewing court 'must use its experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of [inaccurate] or ambiguous inference....'" *Id.* (quoting *United States v. Kwitek*, 467 F.2d 1222, 1226 (7th Cir.1972), *cert. denied*, 409 U.S. 1079, 93 S.Ct. 702, 34 L.Ed.2d 668 (1972)). Having done so, we conclude that the conspiracy conviction must be reversed.

### III. CONCLUSION

Kimmons presented one substantive challenge to his cocaine convictions—that there was insufficient evidence to support his conviction. The other claim by Kimmons was that the delay in receipt of the trial transcript violated his due process rights. We acknowledge that an unfortunate delay did occur with respect to the trial transcript, but no prejudice to Kimmons resulted. He received a full and fair appeal in a delayed, but relatively short, span of time. We also find that Kimmons engaged only in a buyer-seller relationship not a conspiracy. We therefore reverse the judgment of conviction for conspiracy, affirm the five remaining convictions and remand for resentencing. The sentences were concurrent, but we remand for further sentence consideration in the event the conspiracy

conviction may have influenced the other sentences imposed.

AFFIRMED IN PART. REVERSED IN PART.