974 F.2d 1340
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Charles ROGERS, Petitioner-Appellant,
v.
STATE OF WISCONSIN, Respondent-Appellee.
 No. 90-3103.
 United States Court of Appeals, Seventh Circuit.
 Submitted June 16, 1992.*
Decided July 22, 1992.
 
 Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Charles Rogers petitioned the district court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He brings this pro se appeal following dismissal for failure to exhaust his claims in available state fora. Because state remedies exist and Rogers has yet to avail himself of them, we affirm.
 
 I. BACKGROUND
 
 2
 A Milwaukee County Circuit Court judge sentenced Rogers to life imprisonment on December 7, 1989 for the commission of first degree murder while using a dangerous weapon, a violation of WIS.STATS. §§ 940.01 and 939.63(1)(a). He filed a timely notice of his intent to pursue post-conviction relief and trial transcripts were ordered on January 17, 1990. William J. Tyroler, an Assistant Public Defender appointed to represent Rogers in post-conviction proceedings, notified him in a letter dated January 19, 1990 that "[w]e are in the process of obtaining the court record and transcripts relating to your case." Pleadings, filed Oct. 30, 1990, at 9.
 
 
 3
 That process continued and is the basis for this appeal. Rogers wrote Tyroler on April 21, 1990, demanding that he obtain all trial transcripts. Tyroler responded on May 1, 1990, explaining that a total of fourteen transcripts, from two court reporters, were missing. He further noted that one of the two reporters estimated that she could finish the transcripts in another forty-five days. Tyroler closed the correspondence by assuring Rogers that he was "doing everything to speed up delivery." Id. Citing a backlog, the other reporter requested a thirty-day extension from the Milwaukee County Circuit Court on May 4, 1990.[1]
 
 
 4
 A conflict of interest required the appointment of new counsel. Private attorney Michael L. Chernin took over on July 6, 1990. On July 11, 1990, the court issued an order directing Chernin to take necessary action to file the transcripts, which he said he received on August 17, 1990, Pleadings, filed Oct. 30, 1990, at 3, exactly seven months after the initial request for their production. In early September, Rogers terminated the attorney-client relationship. Appellant's Reply Brief, filed July 15, 1991, Exhibit I. On September 19, 1990, the Wisconsin Court of Appeals ordered immediate appointment of new counsel and granted Rogers an extension of sixty days in which to file a notice of appeal or post-conviction motion.[2] Id.
 
 
 5
 During these proceedings in the state system, on July 25, 1990, Rogers filed a pro se petition in federal court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He alleged violations of his federal constitutional rights on several grounds.[3] On each of the lines of the standard form inquiring whether the petitioner had appealed the case in a state tribunal, Rogers wrote "N.A. The State has refused to produce my transcripts for purpose of appeal." Pleadings at 1. He neglected to state, however, from whom he had requested the transcripts, or exactly which parties had refused to produce them. In a subsequent letter to the district court dated August 23, 1990, Rogers accused Chernin of incompetence and ineffectiveness. He did not elaborate but indicated that he would not permit Chernin to represent him on appeal in state court.
 
 
 6
 The district court dismissed Rogers' habeas petition without prejudice on August 29, 1990, concluding that he did not exhaust his state court remedies on the asserted claims, including the additional allegation that Chernin failed to provide effective assistance of counsel. Prior to filing a timely notice of appeal in this court on September 20, 1990, Rogers moved the district court to reconsider its decision, a motion the court denied on September 27, 1990.[4] The district court's alleged denial of his due process rights, according to Rogers, furnished the grounds for the motion for reconsideration as well as for the appeal. Rogers alleges that the court improperly dismissed the habeas petition without first granting him an adequate opportunity to refute the State of Wisconsin's claim that he had failed to exhaust state court remedies. Judge Reynolds granted a certificate of probable cause on October 3, 1990.[5]
 
 II. ANALYSIS
 
 7
 Before a district court may grant a writ of habeas corpus, the petitioner first must exhaust all possible remedies in the state courts. Ex parte Royall, 117 U.S. 241, 251 (1886); Keeney v. Tamayo-Reyes, No. 90-1859, 1992 WL 86572, at * 4 (U.S. May 4, 1992); Varnell v. Young, 839 F.2d 1245 (7th Cir.1988).
 
 
 8
 Congress codified that requirement in 28 U.S.C. § 2254 but provided for an exception to exhaustion if a prisoner has no opportunity to receive redress in state court, or if the process is so inadequate as to obviate any attempt to obtain relief. See, e.g., Duckworth v. Serrano, 454 U.S. 1, 3 (1981); Bartone v. United States, 375 U.S. 52, 54 (1963). Despite policy concerns about comity between the state and federal judicial systems, a petitioner's "failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application." Granberry v. Greer, 481 U.S. 129, 131 (1987).
 
 
 9
 Although this court could entertain Rogers' petition on its merits, we decline to do so because Rogers has yet to avail himself of possible state remedies, let alone exhaust them. Consequently, we affirm the district court. We discuss in turn the possibility that the federal court should have considered Rogers' unexhausted petition for a writ of habeas corpus on the theory of (1) supposedly inordinate delay in the production of his trial transcripts; or (2) alleged ineffectiveness of counsel during state proceedings.
 
 A. Delay in Production of Trial Transcripts
 
 10
 This circuit has excused lack of exhaustion when inordinate delays in state procedures render the state process ineffective. When the lag in state court exceeds the bounds of reasonableness, a district court must hold a hearing to determine whether the delay is justifiable. If it is not justifiable, then the court should consider the state court remedies exhausted and hear the habeas petition on its merits. Lowe v. Duckworth, 663 F.2d 42, 43 (7th Cir.1981) (motion in state court dormant for three and one-half years despite petitioner's attempts to obtain ruling); Dozie v. Cady, 430 F.2d 637 (7th Cir.1970) (seventeen-month delay by attorney in filing appeal briefs).
 
 
 11
 Of criminal litigation languishing in "the Twilight Zone" of a state docket for more than five years, Lane v. Richards, 957 F.2d 363, 364 (7th Cir.1992), we observed that laxness from all quarters had converged into "a woeful performance by the State of Indiana", id. at 3, most notably patience bordering on procrastination by "a judge who has allowed the case to grow a beard". Id.[6] In the instant case, Rogers has awaited meaningful progress on his appeal for over two years and four months. But compared to the petitioners in Lowe and Lane, Rogers' case has sprouted nary a whisker.
 
 
 12
 Inordinate and inexcusable delay in the production of trial transcripts--Rogers' main contention here--can indeed stall the appellate process and create a colorable due process claim under the Fourteenth Amendment of the United States Constitution. But that point begs the question: How long is too long? In United States v. Kimmons, 917 F.2d 1011 (7th Cir.1990), we considered the issue for the first time and responded that despite a five-month delay in the production of trial transcripts, no violation of the appellant's due process rights occurred which would require reversal of his six convictions. Describing the five-month delay as "minimal", id. at 1014, we surveyed cases from other circuits, concluding that Kimmons, by comparison, had experienced a considerably shorter--and thereby less burdensome--wait for his transcripts.[7] In addition, we hesitated to draw a bright line in Kimmons calibrating the exact point at which a delay in the production of a transcript becomes inordinate.
 
 
 13
 In following our analysis in Kimmons, we again adopt the factors established in Barker v. Wingo, 407 U.S. 514 (1972), to determine whether delay in the appellate process violated Rogers' due process rights. The court reporters responsible for transcribing Rogers' trial were required under Wisconsin law to provide the transcripts within sixty days of the date they were ordered.[8] This they did not do. After sixty days had elapsed, one of the reporters asked for a thirty-day extension. The record is unclear whether this reporter abided by the extension, or even if the court granted her request.
 
 
 14
 Although delays in the production of transcripts are unfortunate but common, cf. United States v. Pratt, 645 F.2d 89, 91 (1st Cir.1981), cert. denied, 454 U.S. 881 (1981), the court reporters' failure to comply with statutory obligations here does not rise to the level of a constitutional violation. A conviction must be reversed when a court reporter delays production of a transcript "only if the defendant can demonstrate prejudice." United States v. Nolan, 910 F.2d 1553, 1560 (7th Cir.1990), cert. denied, 111 S.Ct. 1402 (1991). Although Nolan dealt with federal rules regulating the production of transcripts, we apply its reasoning here, evaluating the present claim with a focus on the possibility of prejudice to Rogers.
 
 
 15
 In short, his claim that the state refuses to turn over the transcripts does not stand up to scrutiny. True, the court reporters had not provided his attorneys, either Tyroler or Chernin, with the transcripts by the time Rogers filed the petition for habeas relief on July 25, 1990. (By that date Attorney Chernin had replaced Tyroler.) Chernin received them on or about August 17, 1990, seven months to the day after they were ordered. They were late, to be sure, even counting the extension, but the state eventually produced them. And although Wisconsin law provides for a prisoner to receive his own copy of trial transcripts,[9] Rogers has not shown that he is entitled to them.
 
 
 16
 As Chernin was reviewing the transcripts and preparing to discuss the appeal with his client, Rogers already had filed the habeas petition and had raised in a letter what Judge Reynolds interpreted to be a claim of ineffective assistance of counsel. In September 1990, attorney Pigatti replaced Chernin. Despite Pigatti's repeated requests, Chernin took two months to turn over the transcripts. The Wisconsin Court of Appeals granted Rogers yet another extension for filing an appeal or post-conviction motion. This pattern of delay and neglect understandably has tried Rogers' patience. Since his conviction in December 1989, he has waited more than two years and four months to appeal his case. But as we have said, " 'not every delay in the appeal of a case, even an inordinate one, violates due process.' " Kimmons, 917 F.2d at 1014 (quoting Rheuark, 628 F.2d at 303).
 
 
 17
 Moreover--and significantly--the convoluted procedural history in this case suggests that tardiness by the court reporters in producing the transcript is not the sole or even the main factor responsible for the prolonged delays. The transition in counsel from Tyroler to Chernin undoubtedly postponed the appeal process, and Rogers slowed things down himself by insisting that Chernin withdraw from the case. Chernin's own unexplained refusal to cooperate with Pigatti further hindered any chance at a speedy appeal. Additionally, the record suggests that Pigatti himself failed to comply with the January 21, 1991 deadline set by the Wisconsin Court of Appeals for filing a notice of appeal or post-conviction motion.
 
 
 18
 To be sure, the state court appeal has been mired in delay. But since we cannot see how any delay in the production of transcripts prejudiced[10] Rogers to a degree violative of his due process rights, he has not overcome the exceptions to the exhaustion doctrine discussed above. On the issue of transcripts, then, his appeal fails.
 
 B. Ineffective Assistance of Counsel
 
 19
 The exhaustion doctrine requires an assertion of ineffective assistance of counsel to be presented to the state courts before it may be designated as an independent ground for habeas relief. Murray v. Carrier, 477 U.S. 478, 489 (1986); Duckworth v. Serrano, 454 U.S. 1 (1981). Rogers raised his claim of ineffective assistance of counsel against Chernin for the first time in the district court. Moreover, he did so in a letter to Judge Reynolds. Because Rogers must pursue this claim in state proceedings, the district court properly concluded that he has failed to exhaust state court remedies on the issue of ineffective assistance.
 
 III. CONCLUSION
 
 20
 For the foregoing reasons, the judgment of the district court is
 
 
 21
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 [1]
 Nothing in the record confirms whether the court granted this request
 
 
 [2]
 On November 20, 1990, the day before the state deadline for filing notice of appeal or post-conviction motion, Eugene Pigatti (Rogers' third attorney on the appeal) informed the Wisconsin Court of Appeals that Attorney Chernin, his predecessor, had failed to turn over the trial transcripts and other documents, despite Pigatti's repeated efforts to acquire them. Appellant's Reply Brief, filed July 15, 1991, Exhibit 2. The state court extended the deadline for filing until January 21, 1991, noting in an order dated November 26, 1990 that Chernin had since provided Pigatti with the transcripts
 On April 2, 1991, Rogers received from the Clerk of the Milwaukee County Circuit Court, Criminal Division, a correspondence in response to his inquiry on March 11, 1991. It informed him: "There are no future date [sic] for your file to go to court. I can't seem to find any type of Motion for you on file." Appellant's Reply Brief, Exhibit 4.
 
 
 [3]
 Rogers contends (1) he was illegally arrested in Illinois without a legal warrant and probable cause; (2) he was illegally extradited to Wisconsin; (3) he was held unlawfully in Illinois and Wisconsin without being charged; (4) he was taken to trial and sent to the penitentiary without first being properly and legally charged, convicted, and sentenced; (5) since he is not the "Charles William Rogers" who was charged with the crime of first degree murder, the state of Wisconsin arrested and convicted the wrong man; (6) he has been unable to exhaust his state court remedies because the State of Wisconsin has refused to produce trial court transcripts necessary for his appeal
 
 
 [4]
 Rogers failed to serve his motion for reconsideration on the state within ten days after the district court's entry of judgment. Because Fed.R.Civ.P. 59(b) requires that the motion be served within that ten-day deadline, it was not a proper Rule 59 motion. Charles v. Daley, 799 F.2d 343 (7th Cir.1986). Consequently, the filing of the motion neither made Rogers' notice of appeal premature nor nullified it. Cf. Muhammad v. DeRobertis, 788 F.2d 1268 (7th Cir.1986) (filing of Rule 59 motion made earlier-filed notice of appeal premature and a nullity). Since the notice was timely, we did not dismiss the appeal
 
 
 [5]
 Judge Reynolds framed the issue on appeal as "whether or not Rogers has exhausted his state court remedies.... [It] is an appealable issue in this case because Rogers claims that the State of Wisconsin is prohibiting him from appealing his state-court conviction in a timely fashion." Appellant's Brief, filed May 31, 1991, at 4; Pleadings at 14
 
 
 [6]
 The other factors included benign neglect by a busy but ultimately misleading public defender, dismissive indifference by the Indiana Disciplinary Commission, and blithe obliviousness by the prosecutor. Lane, 957 F.2d at 364
 
 
 [7]
 See Kimmons, 917 F.2d at 1014, which catalogs the length of delay in the production of trial transcripts in several cases. E.g. Rheuark v. Shaw, 628 F.2d 297 (5th Cir.1980), cert. denied, 450 U.S. 931 (1981) (twenty-three months and eleven days); United States v. Antoine, 906 F.2d 1379 (9th Cir.1990), cert. denied, 111 S.Ct. 398 (1990) (three years); De Lancy v. Caldwell, 741 F.2d 1246 (10th Cir.1984) (three years). While the courts in Antoine and De Lancy remanded for further proceedings, only in Rheuark did the court by applying a four-factor test assume--but not decide--that a delay attributable to the state exceeded the limits of due process. Id. at 302
 See also Hale v. Lockhart, 903 F.2d 545 (8th Cir.1990) (seven month delay in production of transcripts did not violate petitioner's due process rights).
 
 
 [8]
 Wisconsin law provides in pertinent part:
 The court reporter shall file the transcript with the trial court and serve a copy of the transcript on the defendant within 60 days of the ordering of the transcript ... The reporter may seek an extension under s. 809.16(4) for filing and serving the transcript.
 WIS.STAT. § 809.30(2)(g) (1989-90).
 A reporter may obtain an extension for filing the transcript only by motion showing good cause filed in the court and served on all parties to the appeal.
 WIS.STAT. § 809.16(4) (1989-90).
 
 
 [9]
 "The transcript of all other testimony and proceedings upon order of a court shall be delivered to a prisoner within 120 days of his or her request." WIS.STAT. § 973.08(3)
 
 
 [10]
 With prejudice as the focus of our determination, we deem it unnecessary to consider the three other factors discussed in Barker. Cf. Kimmons, 917 F.2d at 1011