82 F.3d 420
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donovan K. DAWES, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-2251.
 United States Court of Appeals, Seventh Circuit.
 Submitted Jan. 24, 1996.[1]
Decided April 11, 1996.
 
 Before FAIRCHILD, COFFEY, and DIANE P. WOOD, Circuit Judge.
 
 ORDER
 
 1
 Petitioner Donovan K. Dawes filed a petition to reduce or vacate his sentence, 28 U.S.C. § 2255, arguing that he should be permitted to withdraw his plea of guilty to conspiracy under 21 U.S.C. § 846. Petitioner claimed "that his plea of guilty was due to a violation of his Fifth Amendment Due Process Rights deriving from illegal grand jury testimony; that his sentence was improperly enhanced by two points for allegedly being a supervisor; that he was improperly charged for conspiracy; and that he received ineffective assistance of counsel." Petitioner's Memorandum of Law in support of his 28 U.S.C. § 2255 motion, page 1 ("Memorandum").
 
 
 2
 In 1990, pursuant to a conditional guilty plea, Dawes was convicted of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846. The district court sentenced Dawes to 185 months' imprisonment. Dawes filed a direct appeal, and this court affirmed. United States v. Thompson, 944 F.2d 1331 (7th Cir.1991). Count One of the indictment charged Dawes with conspiracy with Todd Thompson and others to possess and distribute cocaine. Other counts charged him with six violations of the Travel Act by sponsoring the interstate travel of Chris Guddie and Jennifer Bailey, constructive possession of cocaine carried by Bailey from Los Angeles to Milwaukee in February 1989, and cocaine possessed by Guddie in May 1989, and use of the telephone to facilitate drug offenses.
 
 
 3
 Shortly before trial, Dawes' counsel negotiated a plea agreement whereby Dawes pled guilty to Count One, and all other counts were dismissed.
 
 
 4
 Dawes' plea was conditional on his right to appeal the district court's denial of his motions to suppress evidence and to dismiss the indictment.
 
 
 5
 As will be evident from our discussion, Dawes could not succeed on any of his § 2255 challenges to his conviction or sentence unless he could establish that he received ineffective assistance of counsel and was prejudiced thereby. Reed v. Farley, 114 S.Ct. 2291, 2300 (1994); Murray v. Carrier, 477 U.S. 478, 488 (1986); United States v. Frady, 456 U.S. 152, 167-68 (1982).
 
 I. Improper Use of Grand Jury
 
 6
 Dawes, through counsel, brought a motion before the district court to dismiss the indictment because the government had abused the grand jury process by calling witnesses against him after he had been indicted. The district court denied the motion and Dawes, through the same counsel, challenged that ruling on appeal. This court decided that Dawes had clearly failed to establish impropriety as to witness McHenry. Certain questions asked of the other witness, Bailey, were deemed improper. These related only to Count Five, constructive possession of cocaine carried by Bailey in February 1989. We noted that Count Five had been dismissed and concluded that "Even apart from Bailey's testimony, the evidence linking Dawes to the conspiracy was overwhelming and he would not have been prejudiced as to that count by Bailey's testimony before the Grand Jury had he gone to trial." 944 F.2d at 1339.
 
 
 7
 Dawes' claim, presented in his memorandum, appears to be somewhat different from his argument for dismissal, rejected by this court. As nearly as we can discern, it is that if the government had not been in possession of Bailey's testimony supporting Count Five, Dawes "would have insisted on going to trial and defend[ing] against the initial evidence that was available [to] the government...." Memorandum, p. 8. Elsewhere he says, "Thus essentially the petitioner was coherced [sic] by his counsel into taking a plea of guilty because the government had unlawfully gained additional leverage in trial strategy as a result of grand jury abuse." Memorandum, p. 9.
 
 
 8
 Dawes made references to coercion, without specifics. He did not describe advice counsel gave or failed to give concerning the Bailey testimony which could be deemed ineffective assistance of counsel. In any event, in the light of this court's earlier conclusions about the Bailey testimony we deem it incredible that his concern over the government's producing her testimony at trial would have caused him to plead guilty to Count One while obtaining dismissal of all other counts.
 
 II. Enhancement for Being a Supervisor
 
 9
 At sentencing, Dawes was given two points for exercising a supervisory role in the conspiracy. See U.S.S.G. § 3B1.1(c). Dawes contends that he was not a supervisor.
 
 
 10
 Absent extraordinary circumstances, a district court's misapplication of the Sentencing Guidelines is not cognizable in a § 2255 proceeding. Scott v. United States, 997 F.2d 340, 343 (7th Cir.1993). We have said, however, that "Grave errors by judge and counsel might make a sentence under the Guidelines 'unreliable or ... fundamentally unfair.' " Durrive v. United States, 4 F.3d 548, 551 (7th Cir.1993).
 
 
 11
 Dawes did not obtain a transcript of his change of plea or sentencing hearings; thus, the record does not reflect their content. The district judge's recollection was that the plea was entered voluntarily, knowingly, and intelligently, and Dawes makes no claim that the colloquy at the time of the plea showed otherwise. We assume, as Dawes claims and the government seems to accept, that counsel did not challenge the supervisor enhancement. Dawes is content to present the grand jury testimony of Chris Guddie and Jennifer Bailey as supporting his claim that he did not supervise them.
 
 
 12
 Guddie testified that at Todd Thompson's direction she made about fifteen trips to Los Angeles, carrying money Thompson furnished. After reaching a hotel in Los Angeles she would get in touch with "D" (evidently Dawes). He would come to her room and take the money out of the briefcase, sometimes counting it and sometimes not. Later he would return with cocaine, which she took back to Thompson in Milwaukee. After about half the trips, she would call D to tell of her safe arrival, and after the other trips D would call her to inquire. Twice when she got in touch with D after arrival at a hotel, he directed her to change hotels. On one occasion she borrowed $550 from D for return air fare. She knew that another person, named Mary, was making the same type of trips.
 
 
 13
 Bailey testified that she made one trip similar to those described by Guddie. Her testimony was held to have been improperly obtained. 944 F.2d at 1337.
 
 
 14
 Dawes' plea had admitted the fact of his conspiracy with Todd Thompson. Assuming that Guddie's testimony was the only evidence tending to show that Dawes supervised her, it was not clearly erroneous for the court to find that he did. Counsel's failure to object to the part of the presentence report identifying Dawes as a supervisor was not a grave error making the sentence unreliable or fundamentally unfair.
 
 III. Factual Basis for Plea to Conspiracy
 
 15
 Dawes claimed, "The petitioner has presented evidence before this Court which clearly establishes the fact that he was a supplier to the organization of Todd Thompson, and argues further in this motion that a supplier to a drug organization should not be classified as a conspirator along with the buyer and his workers." Memorandum, p. 25.
 
 
 16
 Dawes' reference to the evidence presented is doubtless again to the Guddie and Bailey grand jury testimony. Lacking a transcript of the plea hearing, we do not know what the government may have presented to satisfy the court that there is a factual basis for the plea.
 
 
 17
 Dawes relies on such cases as United States v. Kimmons, 917 F.2d 1011, 1016 (7th Cir.1990) ("The relationship of buyer and seller absent any prior or contemporaneous understanding beyond the mere sales agreement does not prove a conspiracy....") (emphasis added), quoting United States v. Ford, 324 F.2d 950, 952 (7th Cir.1963); and United States v. Baker, 905 F.2d 1100, 1106 (7th Cir.), cert. denied, 498 U.S. 876 (1990) ("A buyer does not automatically become a member of a conspiracy").
 
 
 18
 The Guddie testimony, even if it stood alone, proves a series of fifteen sales of substantial amounts of cocaine to Thompson through an emissary. In view of the quantities, Dawes must have known that the purpose was distribution. The repetition and evident prearrangement would permit a jury to find an ongoing relationship and an agreement to carry out the purpose. Indeed such a finding would be quite likely. That is sufficient for conviction of conspiracy. United States v. Lechuga, 994 F.2d 346, 349-50 (7th Cir.1993); United States v. Douglas, 874 F.2d 1145, 1152 (7th Cir.1989); United States v. Koenig, 856 F.2d 843, 854 (7th Cir.1988).
 
 
 19
 In any event, by pleading guilty Dawes admitted the fact of conspiracy.
 
 
 20
 In his memorandum before the district court, Dawes says his counsel advised and allowed him to plead guilty to conspiracy, coerced him, and rushed him. Nowhere did he describe any advice his counsel gave or omitted to give which could be an error constituting ineffective assistance of counsel. In his brief in this court he says he "was not given proper advice regarding the elements of the charges against him, which would have resulted in him not pleading to the charges had he been given the right advice." Aside from being late, that claim is general and conclusory, and would have been insufficient if made in the district court.
 
 IV. Ineffective Assistance of Counsel
 
 21
 In order to establish ineffective assistance of counsel, Dawes must show that his attorney's conduct fell below an objective standard of reasonableness and outside the wide range of professionally competent assistance. He also must show that, because of these errors, the outcome is unreliable or fundamentally unfair. Strickland v. Washington, 466 U.S. 668 (1984); Barker v. United States, 7 F.3d 629, 633 (7th Cir.1993). See also Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993). In a guilty plea setting, in order to show ineffective assistance of counsel, Dawes would have to show that "there is a reasonable probability that, but for counsel's errors, he 'would not have pleaded guilty and would have insisted on going to trial.' " Liss v. United States, 915 F.2d 287, 291 (7th Cir.1990), quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985). Given the empty record presented by Dawes, it is especially important to note that the prejudice component of an ineffective assistance of counsel claim cannot be satisfied by mere conclusory allegations. United States v. Limehouse, 950 F.2d 501, 503 (7th Cir.1991).
 
 
 22
 As already stated, Dawes cannot succeed on his claims of ineffective assistance of counsel with respect to the Bailey testimony, enhancement of sentence for being a supervisor, or the factual basis for his admission of conspiracy.
 
 
 23
 In addition, he cites a disagreement with counsel concerning tapes of wire-tapped conversations in the possession of the government. Presumably these are the 72 tapes the government intended to use at trial, copies of which were supplied to defendant. 944 F.2d at 1340. Dawes' counsel sought unsuccessfully to suppress these tapes, gathered from a wiretap placed on Todd Thompson's telephone. 944 F.2d at 1339-40. Dawes says he asserted to counsel that his voice was not on the tapes, but counsel told him that it was his voice. Dawes claims that counsel "had then stated to him that he could not allow him to listen to the tapes, and then advised the petitioner that it was best he should consider entering into a plea agreement regardless whether he believed his voice was on the tapes or not." Memorandum, p. 30. Citing Rule 901(b)(5) and (6) of the Federal Rules of Evidence, Dawes asserts that counsel should have put "the government to an adversarial burden of proving by competent facts that the petitioner's voice was indeed on the wire-tapped conversation...." Memorandum, p. 33
 
 
 24
 Of course it would have been counsel's duty, if the case had gone to trial, to hold the government to proving admissibility of the tapes in accordance with the rule cited. Nothing, however, required counsel to settle the matter pretrial. We do not know why counsel would not permit Dawes to listen to the tapes. Counsel's reliance, however, in evaluating the strength of the government's case, on his own comparison of the voice on the tapes with his client's voice was not outside the wide range of reasonable professional assistance.
 
 
 25
 Dawes also claims ineffective assistance of counsel because counsel "approached him unexpectedly with a plea proffer from the government just one week away from the scheduled trial date." Memorandum, p. 38. He states nothing more about the negotiations nor any reason why his own input would have produced a better bargain.
 
 
 26
 The judgment appealed from is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record